IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREW F. WALKER,

       Petitioner,               No. CIV S-07-2070 FCD DAD P

   vs.

D.K. SISTO, et al.,

       Respondents.       <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In the application for relief pending before this court, petitioner challenges the decision of the California Board of Prison Terms, now the California Board of Parole Hearings (hereinafter "Board"), to deny him parole for one year at his fourteenth parole consideration hearing held on April 4, 2006.  Specifically, petitioner claims that the decision violated his federal constitutional rights to due process, equal protection, and a jury trial and was also issued in violation of the Ex Post Facto and Double Jeopardy Clauses and state law.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be granted with respect to his due process claim.

/////

1

PROCEDURAL BACKGROUND

Petitioner is confined pursuant to a judgment of conviction entered in the Alameda County Superior Court on November 14, 1977 on charges of first degree murder and kidnapping. (Pet. at consecutive p. 1.) Pursuant to that state court conviction, petitioner was sentenced to life in state prison with the possibility of parole. (Id.)

The parole consideration hearing at issue was held on April 4, 2006. (Pet., Ex. entitled "2006 Transcripts" (hereinafter Transcript).) It was petitioner's fourteenth parole consideration hearing. (Pet., Ex. entitled "preliminary statement," at 2.) On that date, a panel of the Board found petitioner not suitable for parole and denied parole for one year. (Id.)

Petitioner challenged the Board's decision in a petition for a writ of habeas corpus filed in the Alameda County Superior Court. (Answer, Ex. 2.) That petition was denied by order dated March 1, 2007, with the following reasoning:

> The Petition for writ of habeas corpus is denied. The Petition fails to state a prima facie case for relief. While not submitting a transcript of the entire hearing, Petitioner has submitted numerous documents in support of his Petition, review of the transcripts provided and documents pertaining to the April 4, 2006 hearing, indicate that there was no abuse of discretion by the Board of Prison Terms. The factual basis of the BPT's decision granting or denying parole is subject to a limited judicial review. A Court may inquire only whether some evidence in the record before the BPT supports the decision to deny parole. The nature of the offense alone can be sufficient to deny parole. (In re Rosenkrantz (2002) 29 Cal.4th 616, 652, 658, 682; In Re Dannenberg (2005) 34 Cal.4th 1061. The record presented to this Court for review demonstrates that there was certainly some evidence, including, but not limited to the committing offense, including Petitioner's continuing denial of culpability for that offense, and the conclusions contained in the psychologist's report about the future dangerousness of Petitioner based on his insistence of not being the perpetrator of the committing offense. There is nothing in the record that indicates that the Board's decision was arbitrary or capricious, nor that Petitioner's equal protection or due process rights were violated. Thus, Petitioner has failed to meet his burden of sufficiently proving or supporting the allegations that serve as the basis for habeas relief.

(Answer, Ex. 1.)

2

1    Petitioner subsequently filed a petition for a writ of habeas corpus in the

2    California Court of Appeal.  (Answer, Ex. 3.)  Although the record before this court does not

3    contain a copy of the Court of Appeal's decision in response to this petition, respondent

4    represents that it was summarily denied.  (Answer at 2 & Ex. 4.)  On June 20, 2007, petitioner

5    filed a petition for a writ of habeas corpus in the California Supreme Court.  (Answer, Ex. 5.)

6    That petition was summarily denied by order dated August 8, 2007.  (Answer, Ex. 6.)

7                              FACTUAL BACKGROUND

8    The Board described the facts of petitioner's offenses, which have not changed

9    over the years, at the April 4, 2006 parole suitability hearing, as follows:

10   On October 20th, 1976, Walker sought revenge after learning from
     a third party (Timothy Vaughn, V-A-U-G-H-N) that the victim
11   McWoodson . . . had burglarized his apartment.  Walker armed
     himself with a revolver, asked the witness to direct himself to the
12   McWoodson residence.  After arriving, Walker began beating
     McWoodson.  Testimony indicates the victim made a futile attempt
13   to apologize for the burglary.  He was taken by gunpoint and was
     forced to drive his car to a remote area near the Oakland Coliseum.
14   Witness Vaughn was told by Walker to exit the vehicle and 'run
     and not look back.'  Victim McWoodson was found shot to death
15   in the rear seat of his vehicle the following day.  He had been shot
     four times at close range and had expired from the gunshot
16   wounds.  Later investigation revealed a leather jacket belonging to
     Walker with bloodstains that matched samples of the deceased
17   blood."  And this summarizes information more further set forth in
     the resume authored by the District Attorney's office, which is
18   presented, and counsel had knowledge.  The prisoner's version in
     the report is as follows:  "Walker stated that October 20th, 1976, a
19   third party Timothy Vaughn informed him that McWoodson (the
     victim) had burglarized his place of residence.  Vaughn
20   accompanied Walker to McWoodson's residence where Walker
     confronted McWoodson about the burglary.  A conversation
21   resulted in McWoodson admitting the burglary and agreeing to
     return all stolen property.  Walker left and claims he had no further
22   contact with McWoodson, and that he knows nothing about the
     murder."  This matter proceeded to jury trial, and Mr. Walker was
23   convicted for the offense for which he is now in custody, and his
     denial has been consistent all along.

24

25   /////

26   /////

3

1  (Transcript at 7-9.)  Petitioner declined to discuss his offense of commitment at the April 4, 2006

2  parole consideration hearing, maintaining that he was innocent of the murder of Timothy

3  Vaughn.  (Id. at 5.)

4                                     ANALYSIS

5  I.  Standards of Review Applicable to Habeas Corpus Claims

6           A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

7  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

8  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

9  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

10 interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

11 Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

12 corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

13 (1972).

14          This action is governed by the Antiterrorism and Effective Death Penalty Act of

15 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

16 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

17 habeas corpus relief:

18          An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
19          not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
20          claim -

21          (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
22          determined by the Supreme Court of the United States; or

23          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
24          State court proceeding.

25 See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

26 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

1    The court looks to the last reasoned state court decision as the basis for the state

2    court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

3    court reaches a decision on the merits but provides no reasoning to support its conclusion, a

4    federal habeas court independently reviews the record to determine whether habeas corpus relief

5    is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

6    Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

7    reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

8    AEDPA's deferential standard does not apply and a federal habeas court must review the claim

9    de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

10   1167 (9th Cir. 2002).

11   II.  Petitioner's Claims

12        Petitioner claims that the Board's decision finding him unsuitable for parole at the

13   April 4, 2006, hearing violated his federal constitutional rights to due process, equal protection,

14   and a jury trial.  He also claims that the Board's decision violated the Ex Post Facto Clause, the

15   Double Jeopardy Clause and state law.  (Pet., Ex. entitled "Exhibits & Contents.")  Petitioner

16   argues that his inability to be found suitable for parole has transformed his sentence into life

17   without the possibility of parole in the absence of a jury "finding the special circumstances," in

18   violation of his Sixth Amendment right to a jury trial.  (Pet., Ex. entitled "tolling" at I, Ex.

19   entitled "preliminary statement" at 2, 4-5, Ex. entitled "Memorandum - Points & Authorities" at

20   10.)  Petitioner contends that he has been a "model inmate," has made a sincere attempt to

21   rehabilitate himself, and has served more time than other prisoners convicted of first degree

22   murder.  (Pet., Ex. entitled "preliminary statement" at 2-3.)  He also argues that the parole

23   suitability regulations are unconstitutionally vague.  (Pet., Ex. entitled "Memorandum - Points &

24   Authorities" at 9.)  Petitioner contends that his continued incarceration constitutes an Ex Post

25   Facto violation because his sentence has been increased to one of life without parole.  (Pet., Ex.

26   entitled "Argument I" at 12.)  In this regard, he argues that he is being retained in prison pursuant

to an illegal "no parole policy." (Pet., Ex. entitled "Argument V" at 21.) Petitioner also makes

numerous arguments throughout the petition that his continued incarceration violates state law.

       As set forth below, this court will recommend that the instant habeas corpus

petition be granted with respect to petitioner's due process claim. In light of that recommended

disposition, the court will not address petitioner's remaining challenges to the Board's 2006

decision finding him unsuitable for parole.

      A.  <u>Due Process in the California Parole Context</u>

       The Due Process Clause of the Fourteenth Amendment prohibits state action that

deprives a person of life, liberty, or property without due process of law. A litigant alleging a

due process violation must first demonstrate that he was deprived of a liberty or property interest

protected by the Due Process Clause and then show that the procedures attendant upon the

deprivation were not constitutionally sufficient. <u>Kentucky Dep't of Corrections v. Thompson</u>,

490 U.S. 454, 459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).

       A protected liberty interest may arise from either the Due Process Clause of the

United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

expectation or interest created by state laws or policies." <u>Wilkinson v. Austin</u> 545 U.S. 209, 221

(2005) (citations omitted). <u>See</u> <u>also</u> <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987). The

United States Constitution does not, of its own force, create a protected liberty interest in a parole

date, even one that has been set. <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981). However, "a

state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release

will be granted' when or unless certain designated findings are made, and thereby gives rise to a

constitutional liberty interest." <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz v. Inmates of</u>

<u>Nebraska Penal</u>, 442 U.S. 1, 12 (1979)). California's parole scheme gives rise to a cognizable

liberty interest in release on parole, even for prisoners who have not already been granted a

parole date. <u>Sass v. Cal. Bd. of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006); <u>Biggs v.</u>

<u>Terhune</u>, 334 F.3d 910, 914 (9th Cir. 2003); <u>McQuillion</u>, 306 F.3d at 903; <u>see</u> <u>also</u> <u>In re</u>

1   Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008).  Accordingly, this court must examine

2   whether the state court's conclusion that California provided the constitutionally required

3   procedural safeguards when it deprived petitioner of a protected liberty interest is contrary to or

4   an unreasonable application of federal law.

5          Because "parole-related decisions are not part of the criminal prosecution, the full

6   panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

7   Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

8   citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

9   process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

10  notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

11  reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

12  Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

13  parole issues).  Violation of state mandated procedures will constitute a due process violation

14  only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

15         In California, the setting of a parole date for a state prisoner is conditioned on a

16  finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

17  requirements of due process in the parole suitability setting are satisfied "if some evidence

18  supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

19  445, 456 (1985)).  See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v.

20  Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence"

21  standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at

22  456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if

23  there is any evidence in the record that could support the conclusion reached by the factfinder.

24  Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v.

25  McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's

26  decision must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler,

974 F.2d at 1134.  Determining whether the "some evidence" standard is satisfied does not

require examination of the entire record, independent assessment of the credibility of witnesses,

or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any

reliable evidence in the record that could support the conclusion reached.  Id.

When a federal court assesses whether a state parole board's suitability

determination was supported by "some evidence" in a habeas case, the analysis "is framed by the

statutes and regulations governing parole suitability determinations in the relevant state."  Irons

v. Carey, 505 F.3d 846, 851 (9th Cir. 2007)  This court must therefore:

> look to California law to determine the findings that are necessary
> to deem a prisoner unsuitable for parole, and then must review the
> record in order to determine whether the state court decision
> holding that these findings were supported by "some evidence" in
> [petitioner's] case constituted an unreasonable application of the
> "some evidence" principle articulated in Hill.

Id.

The state regulation governing parole suitability findings for life prisoners states

as follows with regard to the statutory requirement of California Penal Code § 3041(b):

"Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

society if released from prison."  Cal. Code Regs. tit. 15, § 2281(a).  In California, the overriding

concern in determining parole suitability is public safety.  In re Dannenberg, 34 Cal. 4th at 1086.

This "core determination of 'public safety' . . . involves an assessment of an inmates current

dangerousness."  In re Lawrence, 44  Cal. 4th at 1205 (emphasis in original).  Accordingly,

> when a court reviews a decision of the Board or the Governor, the
> relevant inquiry is whether some evidence supports the decision of
> the Board or the Governor that the inmate constitutes a current
> threat to public safety, and not merely whether some evidence
> confirms the existence of certain factual findings.

Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071;

and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

1    Under California law, prisoners serving indeterminate prison sentences "may

2  serve up to life in prison, but [] become eligible for parole consideration after serving minimum

3  terms of confinement." In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally sets a parole

4  release date one year prior to the inmate's minimum eligible parole release date, and does so "in

5  a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect

6  to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code §

7  3041(a).  A release date must be set "unless [the Board] determines that the gravity of the

8  current convicted offense or offenses, or the timing and gravity of current or past convicted

9  offense or offenses, is such that consideration of the public safety requires a more lengthy period

10  of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal. Penal Code §

11  3041(b).  In determining whether an inmate is suitable for parole, the Board must consider all

12  relevant, reliable information available regarding

13         the circumstances of the prisoner's social history; past and present
           mental state; past criminal history, including involvement in other
14         criminal misconduct which is reliably documented; the base and
           other commitment offenses, including behavior before, during and
15         after the crime; past and present attitude toward the crime; any
           conditions of treatment or control, including the use of special
16         conditions under which the prisoner may safely be released to the
           community; and any other information which bears on the
17         prisoner's suitability for release.

18  Cal. Code Regs., tit. 15, § 2281(b).

19    The regulation identifies circumstances that tend to show suitability or

20  unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances have been identified

21  as tending to show that a prisoner is suitable for release:  the prisoner has no juvenile record of

22  assaulting others or committing crimes with a potential of personal harm to victims; the prisoner

23  has experienced reasonably stable relationships with others; the prisoner has performed acts that

24  tend to indicate the presence of remorse or has given indications that he understands the nature

25  and magnitude of his offense; the prisoner committed his crime as the result of significant stress

26  in his life; the prisoner's criminal behavior resulted from having been victimized by battered

9

1  women syndrome; the prisoner lacks a significant history of violent crime; the prisoner's present

2  age reduces the probability of recidivism; the prisoner has made realistic plans for release or has

3  developed marketable skills that can be put to use upon release; institutional activities indicate an

4  enhanced ability to function within the law upon release.  Id., § 2281(d).

5          The following circumstances are identified as tending to indicate unsuitability for

6  release:  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

7  the prisoner had a previous record of violence; the prisoner has an unstable social history; the

8  prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

9  problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

10  2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

11  especially heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or

12  killed in the same or separate incidents; the offense was carried out in a dispassionate and

13  calculated manner, such as an execution-style murder; the victim was abused, defiled or

14  mutilated during or after the offense; the offense was carried out in a manner that demonstrated

15  an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

16  or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

17          In the end, under current state law as recently clarified by the California Supreme

18  Court,

19          the determination whether an inmate poses a current danger is not
        dependent upon whether his or her commitment offense is more or
20       less egregious than other, similar crimes.  (Dannenberg, supra, 34
        Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
21       dependent solely upon whether the circumstances of the offense
        exhibit viciousness above the minimum elements required for
22       conviction of that offense.  Rather, the relevant inquiry is whether
        the circumstances of the commitment offense, when considered in
23       light of other facts in the record, are such that they continue to be
        predictive of current dangerousness many years after commission
24       of the offense.  This inquiry is, by necessity and by statutory
        mandate, an individualized one, and cannot be undertaken simply

25

26  /////

1                 by examining the circumstances of the crime in isolation, without
consideration of the passage of time or the attendant changes in the
2                 inmate's psychological or mental attitude. [citations omitted].

3 In re Lawrence, 44 Cal. 4th at 1221.

4           In addition, in recent years the Ninth Circuit Court of Appeals has concluded that,

5 given the liberty interest that California prisoners have in release on parole, a continued reliance

6 upon an unchanging factor to support a finding of unsuitability for parole over time may

7 constitute a violation of due process.  The court has addressed this issue in three significant

8 cases, each of which will be discussed below.

9           First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued

10 reliance on an unchanging factor such as the circumstances of the offense could at some point

11 result in a due process violation.[1]  While the court in Biggs rejected several of the reasons given

12 by the Board for finding the petitioner in that case unsuitable for parole, it upheld three:  (1)

13 petitioner's commitment offense involved the murder of a witness; (2) the murder was carried

14 out in a manner exhibiting a callous disregard for the life and suffering of another; and (3)

15 petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs

16 cautioned that continued reliance solely upon the gravity of the offense of conviction and

17 petitioner's conduct prior to committing that offense in denying parole could, at some point,

18 violate due process.  In this regard, the court observed:

19                 As in the present instance, the parole board's sole supportable
reliance on the gravity of the offense and conduct prior to
20                 imprisonment to justify denial of parole can be initially justified as
fulfilling the requirements set forth by state law.  Over time,
21                 however, should Biggs continue to demonstrate exemplary
behavior and evidence of rehabilitation, denying him a parole date
22                 simply because of the nature of Biggs' offense and prior conduct
would raise serious questions involving his liberty interest in
23                 parole.

24 /////

25 _____

26      [1] That holding has been acknowledged as representing the law of the circuit.  Irons, 505
F.3d at 853; Sass, 461 F.3d at 1129.

1    Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

2    unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

3    contrary to the rehabilitative goals espoused by the prison system and could result in a due

4    process violation."  Id. at 917.

5              In Sass, the Board found the petitioner unsuitable for parole at his third suitability

6    hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

7    461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these

8    unchanging factors violated due process.  The court disagreed, concluding that these factors

9    amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

10   provided the following explanation for its holding:

11              While upholding an unsuitability determination based on these
               same factors, we previously acknowledged that "continued reliance
12             in the future on an unchanging factor, the circumstance of the
               offense and conduct prior to imprisonment, runs contrary to the
13             rehabilitative goals espoused by the prison system and *could* result
               in a due process violation."  Biggs, 334 F.3d at 917 (emphasis
14             added).  Under AEDPA it is not our function to speculate about
               how future parole hearings could proceed.  Cf. id.  The evidence of
15             Sass' prior offenses and the gravity of his convicted offenses
               constitute some evidence to support the Board's decision.
16             Consequently, the state court decisions upholding the denials were
               neither contrary to, nor did they involve an unreasonable
17             application of, clearly established Federal law as determined by the
               Supreme Court of the United States.  28 U.S.C. § 2254(d).

18

19   Id.

20             In Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

21   stating as follows:

22             Because the murder Sass committed was less callous and cruel than
               the one committed by Irons, and because Sass was likewise denied
23             parole in spite of exemplary conduct in prison and evidence of
               rehabilitation, our decision in Sass precludes us from accepting
24             Iron's due process argument or otherwise affirming the district
               court's grant of relief.

25
               We note that in all the cases in which we have held that a parole
26             board's decision to deem a prisoner unsuitable for parole solely on

the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.  Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125.  All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. <u>Biggs</u>, 334 F.3d at 917.

<u>Irons</u>, 505 F.3d at 853-54.[2]

B. <u>Analysis</u>

In addressing the factors it considered in reaching its 2006 decision that petitioner was unsuitable for parole, the Board in this case stated as follows:

PRESIDING COMMISSIONER FARMER:  All right, Mr. Walker, we reviewed the information contained in your file and the information received from the public, the arguments of counsel. We rely upon the following circumstances to conclude that we believe that you remain unsuitable for parole and continue to pose an unreasonable risk of danger to society or a threat to public safety if released.  You know, you present a conundrum, sir, in that, yes,

---

[2]  The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety.  <u>In re Lawrence</u>, 44  Cal. 4th at 1218-20 & n.20.  Additionally, a panel of the Ninth Circuit in <u>Hayward v. Marshall</u>, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc.  <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

you've been in a long time and you appear to be reasonable as you sit here before us, but the law tells me that I have to look at you as someone who 29 years ago when confronted with the burglary of your house decided to be police, prosecutor, judge, jury, executioner, and for a burglary, you took somebody out and beat him to a pulp and then shot him.  Such an offense was carried out in an especially cruel and callous manner.  The offense was carried out in a dispassionate or calculated murder, resembling an execution style murder.  The victim was abused, defiled, and mutilated during the course of the events.  It was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering, and the motive for the crime, albeit I understand that burglary is a disrupting event, the manner in which this crime was carried out, I believe to be – that the burglary in relation to the magnitude of this crime can be described as clearly trivial.  So the dilemma that we're put in is that we're asked to, in essence, give you credit for standing up for what you believe when you deny it.  On the other hand, we have somebody who has committed a crime of this magnitude who has denied it.  And one of the psychologists in essence said, well, if he – he has great insight if he didn't commit the crime because if he didn't commit the crime he shouldn't be in prison and he shouldn't of been convicted, but a jury found otherwise, the appellate court found otherwise, and we're not in a position to refute that.  So we look at you as that person who is then denying responsibility, and so because we have to accept as true the findings of the court, the other things the psychiatrists are saying you're denying it because you're either not being truthful with yourself and/or us or you're psychotic, and either of those – I mean, put yourself in our situation.  You got somebody sitting across from you who you believe did something of this magnitude and denies it, you know.  I would think that it would cause you a great concern, as it causes us.  I understand your frustration with that, but that reality keeps coming back to us.  And so given that situation, yes, I do, I continue to have serious concerns for public safety about that person, which the law tells me is you, so that's why you are denied.  Your prior record, although you had some brushes with the law, doesn't seem necessarily to relate to this offense, in that you had been holding a good job and had been crime free for a number of years.  It represents exposure to the system.  There's some degree of violence, but not of this magnitude.  Programming, I think you've – I can't recommend that you program any more than you have because you haven't come to the realization now, or I'm not going to persuade you to change your mind, and I don't really intend to try.  That's the position that you've taken, and so, you know – I mean, program if you wish to.  It's always good for us, if nothing else, just for our own mental health, but I'm not assuming that your position is going to change.  And we considered the psychologist's, Dr. Davis's report of August 17th of '05.  He basically says that – some of the same things that I've said, you know, your level of dangerousness kind of depends upon whether you did it or didn't do it.  The law tells us

that we have to accept that you did it, so that is taken from our hands.  Over our concerned input and the city of Oakland and the District Attorney's office, we're going to deny you for a year, just for no other reason then, you now, you've been in a long time.  You're getting old and other Panels have just – have given you year denials, and we don't feel that we ought to be any worse than that.  However, I'll say with candor that, you know, if you're in the same situation in a year that you have now, I'd come up with the same decision, and that's not personal against you.  It's against the situation that I'm presented with.  We have to be convinced that you don't pose a risk, and given a crime of this magnitude and that lack of insight, you know, I just can't go there.  So I think you justifiably be denied for a longer period, but I'm not going to do that.  We'll let another Penal look at it next year.  What you do need to do, sir, is make sure that you have the letters that somehow aren't there now, and why that's not true, I don't know, but it is important that that documentation of the support that you state you have be in the file, and it's not there now.  Make sure for your next hearing that you do have that in hand because a part from what I have talked about that could be a justifiable way for you to be denied, just if the documents aren't there, so we want to make sure that you have the documents and all the other things that you've been told by lots of other Panels.  Still hold true, stay disciplinary free, and all of that, you know.  You're in a difficult situation.  I'm in a difficult situation with that set of facts.  You're a gentleman when appearing before us, and I thank you for that.  I wish you good luck with your cancer surgery or your treatment.  That's a tough thing to go through, and I wish you well.

(Transcript at 43-47.)  After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>, and for the reasons set forth below, this court concludes that petitioner is entitled to federal habeas relief with respect to his due process challenge to the Board's April 4, 2006, decision denying him parole.

At the time of his suitability hearing in 2006, petitioner was sixty-one years old and suffering from leukemia.  (Pet., Ex. entitled "tolling," at iii.)  He had served almost 30 years in prison for his commitment offense.  (<u>Id.</u>)  He has <u>never</u> had a disciplinary conviction while in prison.  The Board recognized, and this court finds, that petitioner's past criminal history does not provide any evidence that petitioner poses a current danger to society.  The Board also noted that petitioner had behaved and programmed exceptionally well in prison.  Although not all of the documentation regarding the prison programs petitioner had participated in was before the

Board, petitioner described the numerous vocational programs he had been involved in and/or

completed. (Transcript at 27-34.)  Petitioner also explained to the Board that he had not

participated in any programming for the past year because he was undergoing chemotherapy. (Id.

at 24-25.)  At the time of the 2006 hearing, petitioner had been married for nearly thirty years and

had an adult son who was attending college.  He had a place to live and a job with his mother-in-

law upon his release from prison.[3]

       The Board addressed few factors in announcing its decision to deny petitioner a

parole date.  First, the Board stated that the commitment offense was carried out in an especially

cruel and callous manner, with an "exceptionally callous disregard for human suffering," and the

motive was very trivial in relationship to the offense.  The Board also noted that the district

attorney had opposed petitioner's release on parole.  However, the Board's decision as a whole

reflects that petitioner was in fact denied release on parole because he maintained his innocence

of the crime.  In this regard, the presiding commissioner told petitioner that, although he

appeared to be "reasonable," the Board was required to view petitioner as the perpetrator of the

crime.  (Tr. at 43.)  The commissioner noted the "dilemma" of being asked on one hand to give

petitioner "credit" for standing up for what he believed in by continuing to maintain his

---

[3]  Petitioner was sentenced on his crime of conviction to a term of life in prison with the possibility of parole.  (Pet., Ex. entitled "Preliminary Statement," at pages marked "2" and "3;" Transcript at 1.)  Pursuant to California Penal Code § 3046(a), a person convicted of first degree murder without special circumstances and sentenced to a straight life term, as was petitioner, is eligible for parole in seven years.  The California Supreme Court has concluded that the seven year parole ineligibility period set by § 3046 is a "minimum term" within the sentence-doubling language of California's Three Strikes Law. People v. Jefferson, 21 Cal. 4th 86, 96, 99 (1999) ("section 3046 establishes a minimum term"). See also In re Dannenberg, 34 Cal. 4th at 1078 ("These indeterminate sentences may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement").  To the extent this seven year period also constitutes the "minimum term" described in Irons for purposes of assessing parole suitability, petitioner has now served more than four times that minimum number of years in prison.  Even assuming arguendo that the seven year period that must elapse before petitioner is eligible for parole does not constitute the "minimum" term described in Irons, petitioner was not sentenced to life in prison without the possibility of parole.  Accordingly, the mere fact that petitioner was sentenced to an indeterminate life term does not preclude him from establishing that the Board's failure to find him suitable for parole violated his right to due process.

1   innocence, while on the other hand being required to consider that petitioner had "committed a

2   crime of this magnitude" and was still denying it.  (Id. at 44.)  The Board resolved that dilemma

3   by assuming that petitioner was "denying responsibility" for the murder.  (Id.)  The commissioner

4   explained that, given petitioner's continued refusal to admit his guilt, he would not receive a

5   parole date at that hearing or at any future parole suitability hearing either.  (Id. at 45.)  The

6   commissioner concluded that given petitioner's protestation of innocence, "I do, I continue to

7   have serious concerns for public safety about [the perpetrator], which the law tells me is you, so

8   that's why you are denied."  (Id.)  The commissioner also characterized petitioner's assertion of

9   innocence as a "lack of insight."  (Id. at 46.)

10          The Board's concerns regarding petitioner's lack of insight and self-understanding

11  clearly constituted the imposition of a requirement in this case that he admit his guilt in the

12  murder in order to be released on parole.  In essence, all of the Board's comments and

13  conclusions were focused on only one factor - that petitioner refused to admit that he was guilty

14  of the murder of Mr. McWoodson.  The Board, however, was not entitled to rely on the fact that

15  petitioner refused to admit guilt in finding him unsuitable for parole.

16          California Penal Code § 5011(b) states that in determining eligibility for parole,

17  the Board "shall not require an admission of guilt to any crime for which an inmate was

18  committed."  When appearing before the Board, an inmate "may refuse to discuss the facts of the

19  crime in which instance a decision shall be made based on the other information available and

20  the refusal shall not be held against the prisoner."  Cal. Code Regs., tit. 15, § 2236.  See also In re

21  Palermo, 171 Cal. App. 4th 1096, 1110-1111 (2009) (Board's denial of parole reversed where

22  court was "not persuaded" that Board's concerns about inmate's "insight" were not an "indirect"

23  "requirement he admit he is guilty of second degree murder"); In re Aguilar, 168 Cal. App. 4th

24  1479, 1491 (2008) (an inmate "'need not admit his guilt or change his story to be found suitable

25  for parole by the Board'").  In the present case, the Board's decision improperly "held against"

26  petitioner his refusal to admit guilt and discuss the circumstances of his crime, in direct violation

1   of California law.  See Cal. Code Reg., tit. 15, § 2236.  Further, the clear import of the presiding

2   commissioner's remarks at the hearing on April 4, 2006 was that petitioner could never be found

3   suitable for parole unless and until he admitted his guilt with respect to his commitment offense.

4   This was improper under California law and the imposition of such an unlawful condition

5   violated petitioner's federal right to due process.  Put another way,  petitioner's failure to admit

6   his guilt of his crime of conviction, without more, does not constitute "some evidence" that he

7   would pose a current danger to society if released and does not support the Board's finding that

8   he currently remains a danger to public safety.  Cf. Evans v. Carey, No. CIV S-06-0376 LKK

9   GGH P, 2007 WL 1182937 (E.D. Cal. Apr. 20, 2007) (unchanging circumstances of petitioner's

10  crime of conviction constituted "some evidence" to support Board's unfavorable suitability

11  decision, apart from petitioner's protestation of innocence, where past psychiatric evaluations

12  concluded that petitioner had narcissistic personality disorder and lacked insight).

13          With respect to the circumstances of the crime of conviction, committed nearly

14  thirty years earlier the panel articulated no nexus, and this court can find none, between those

15  circumstances and petitioner's current dangerousness.  The murder in question was not

16  committed in such an especially heinous, atrocious, or cruel manner as to undermine the fact that

17  petitioner's rehabilitative efforts and performance over nearly thirty years in prison demonstrate

18  he no longer would pose a danger to society if released on parole.  The circumstances of

19  petitioner's commitment offense do not continue to be predictive of his current dangerousness

20  when considered in light of the other factors in the record, all of which indicate that he is not a

21  current danger to society.  Accordingly, this court considers the Board's findings concerning the

22  circumstances of the commitment offense only insofar as they interrelate with petitioner's

23  perceived lack of insight.  However, as discussed above, petitioner declined to discuss the

24  offense, maintaining that he was innocent.  Under California law, petitioner's decision to decline

25  to discuss his crime, other than to maintain his innocence, cannot be relied upon as evidence

26  /////

1  indicating that he lacks insight into the commitment offense.  Nothing in the record supports a

2  finding that a lack of insight makes petitioner a danger to the public if released from prison.

3           The psychological reports relied upon by the Board in 2006 likewise provide no

4  evidence that petitioner would pose a current danger to society if released.  In 2000, Dr. Dean J.

5  Clair opined that, "all things considered, the likelihood is minimal that this very reasonable man

6  would do anything if released that would guarantee his spending the rest of his life in prison."

7  (Ex. 1 to "Objection to October 26, 2009 Court Order," filed November 9, 2009.)  Similarly, in

8  2005 Dr. P. Davis reached the following conclusions regarding  petitioner's suitability for parole:

9
          He has spent 28 years in prison for the instant offense that he said
          he is innocent of committing.  If that is true, then he continues to
10        be non-violent.  Chances of him becoming violent in the future
          would be low according to his history.

11
          If Mr. Walker is guilty of the instant offense and is psychologically
12        defended against remembering the incident, one might wonder if
          he could repeat that act or another act of violence due to his not
13        working through whatever it was that made him commit the act in
          the first place.  If he is guilty and he knows that he is guilty and
14        just outright denying his guilt, then one might wonder about his
          stubbornness.

15
          Nonetheless, he has spent approximately 28 years in prison without
16        being violent.  Whether he was psychologically repressing the
          memory of the murder or not he has not acted on any violent or
17        dangerousness impulses within the prison system, according to
          information reviewed.

18
          Given his recorded history in the files reviewed and from interview
19        and psychological evaluation of this inmate on 08/17/05, he
          appears to show a low risk of dangerousness and violence when
20        compared to the general inmate population.

21  (Id., Ex. 2.)

22           As described above, the conclusions reached by Drs. Clair and Davis were

23  summarized by the Board at the 2006 hearing.[4]  Both doctors knew that petitioner continued to

24  ─────────────────────

25       [4]  On October 26, 2009, this court issued a sua sponte order requiring respondent to lodge
     the Dr. P. Davis 2005 evaluation of petitioner and the 2000 evaluation of petitioner by Dean J.
26   Clair that were relied on and summarized by the Board in finding petitioner unsuitable for parole.
     Respondent lodged these documents, but filed an objection to the court's order on the ground that

                                             19

1    maintain his innocence but nevertheless concluded that his risk of current dangerousness was

2    low.  No evidence placed before the Board at the parole hearing in 2006 contradicted the ultimate

3    finding of both physicians that petitioner posed a low risk of danger to society if released.[5]

4            In sum, this court concludes that there is insufficient evidence to support the

5    Board's ultimate conclusion that petitioner would pose an unreasonable risk of danger if released

6    on parole.  Petitioner had no criminal history prior to the commitment offense; the killing of the

7    victim was not so calculated and heinous as to indicate, without more, that petitioner remains a

8    continuing danger to the public thirty years later; it is impressive that during his many years of

9    imprisonment petitioner has received no disciplinary write-ups; petitioner has effectively

10   participated in rehabilitative programs; psychological evaluations opine that he no longer

11   represents a danger to public safety if released on parole; petitioner has job skills and a job offer

12   if released; and he has a supportive family willing to ease his transition back into society.

13   Applying the federal due process principles expressed in the cases cited above, this court is

14   compelled to conclude that, in light of the period of time that has elapsed since the commitment

15   ───────────────

16   petitioner "did not attach a copy of either psychological evaluation to his state court pleadings."
     (Objection at 1.)  See Holland v. Jackson, 542 U.S. 549, 652 (2004) (pursuant to AEDPA,
17   whether a state court's decision was an unreasonable application of federal legal principles must
     be assessed in light of the record the court had before it, and a federal court may not grant a
18   request to expand the record unless it complies with 28 U.S.C. § 2254(e)(2)).  Exhibit 2 to
     respondent's answer filed in this case reflects that the petition for a writ of habeas corpus filed by
19   petitioner in the Alameda County Superior Court included an exhibit entitled  "BPH 2006
     Decision denying-revoking parole and Psychological Evaluations – Counselors Evaluations."  It
20   therefore appears that the state courts were in possession of the psychological evaluations
     requested by this court.  It also appears that petitioner requested an evidentiary hearing before the
21   state courts but that his request in that regard was denied.  See e.g., Answer, Ex. 5 at 1.  Even
     assuming arguendo that the psychological evaluations completed by Drs. Davis and Clair were
22   not before the state courts, those evaluations were summarized and relied upon by the Board in
     its 2006 decision denying petitioner a parole date.  The psychological evaluations in question are
23   therefore not "new evidence" and they are a necessary part of the record in this case.

24       [5]  The court notes that the presiding commissioner also mentioned the "concerned input"
     of the "city of Oakland and the District Attorney's office" in announcing the Board's decision to
25   deny petitioner parole at the 2006 hearing.  Although opposition to parole by law enforcement is
     to be considered during the parole process, California Penal Code § 3046(c), "voiced opposition
26   to parole is not an enumerated unsuitability factor . . . and such argument is not evidence of
     unsuitability."  Saldate v. Adams, 573 F. Supp.2d 1303, 1310 (E.D. Cal. 2008).

1   crime, the affirmative evidence of petitioner's pre- and post-conviction conduct and his

2   rehabilitative efforts and psychological evaluations, and his stable parole plans, there is no

3   competent evidence to support the Board's finding that petitioner poses a danger to public safety

4   if released on parole.  Under these circumstances, the decision of the Alameda County Superior

5   Court denying habeas relief and upholding the Board's 2006 decision to deny petitioner parole

6   violated due process.

7                                        CONCLUSION

8           Accordingly, IT IS HEREBY RECOMMENDED that:

9           1.  Petitioner's application for a writ of habeas corpus be granted; and

10          2.  Within thirty days from the date of service of this order, the California Board

11  of Parole Hearings calculate a term for petitioner in accordance with the requirements of

12  California Penal Code § 3041, with credit for time since the April 4, 2006, decision as if parole

13  date had been granted, and any other term credit to which petitioner is entitled by law.

14          These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

16  one days after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19  shall be served and filed within fourteen days after service of the objections.  The parties are

20  advised that failure to file objections within the specified time may waive the right to appeal the

21  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22  DATED: December 7, 2009.

23

24                                      _____

25  DAD:8                               DALE A. DROZD
    walker2070.hc                       UNITED STATES MAGISTRATE JUDGE

26